## Commonwealth v. Isenberger, etc.

*Edwin D. Strite*, for Commonwealth.

*Paul M. Crider*, for defendant.

WINGERD, P. J., May 25, 1951.—This is an appeal from the judgment of the justice of the peace for $100

given against defendant, D. M. Isenberger, proprietor of the Rainbow Restaurant, in favor of the Commonwealth of Pennsylvania, Department of Agriculture, because of a violation of sections 2, 3 and 4 of the Act of June 30, 1947, P. L. 1154, 31 PS §800-2 et seq. This act has to do with the sale of oleomargarine. The second section of the act is a general prohibition against the sale or having in possession with intent to sell oleomargarine without first having obtained a license and without observing the provisions of the act. It also provides that oleomargarine ". . . shall be deemed to look like, be in resemblance of, or in imitation of, butter of a shade of yellow, when it has a tint or shade containing more than one and sixth-tenths degrees of yellow, or of yellow and red collectively, but with an excess of yellow over red as measured in the terms of the Lovibond tintometer scale or its equivalent".

Section 3 provides for the issuing of licenses to sell oleomargarine and specifically names as one of the persons to be licensed "a proprietor of a hotel, restaurant or dining-room". It also provides specifically that the license shall not permit the sale or having in possession with intent to sell any oleomargarine colored so as to look like yellow butter. Section 4 provides that after license has been obtained, the licensee shall hang up and display the license in a conspicuous place and "Every proprietor of a hotel, restaurant, dining-room, or boarding-house shall also have placed upon every counter or table at which food, meals or refreshments are served to customers a placard or menu card, plainly printed, stating that oleomargarine is used and served to customers".

At the hearing before the court the uncontradicted testimony was that oleomargarine, both tinted and untinted, was in the kitchen of the restaurant of which defendant is proprietor; that the oleomargarine was kept there for the purpose of dressing spinach and

potatoes and to be used in baking pot pie. Defendant stated that it was colored because he had been informed it gave the food in which it was used a better taste. The record discloses:

"It is stipulated and agreed between the parties that at the time and place indicated by the witness, Mr. Gibson, defendant had uncolored oleomargarine in his refrigerator and colored oleomargarine in a bowl in the kitchen which was a part of his restaurant, and that at that time defendant was operating a restaurant, and at that time defendant had no oleomargarine license, and it is further stipulated and agreed that no placards such as are described in the Oleomargarine Act were displayed at the place of business of defendant."

And on page 7 of the record:

"It is further stipulated that the analysis of the sample taken from the bowl had a tint or shade containing more than 1.6 degrees of yellow or yellow and red collectively, with a yellow over red as measured on the Lovibond tintometer scale or its equivalent."

The only question that is at issue is whether or not having possession of oleomargarine which is to be used as an ingredient of foods to be served to customers at a restaurant is a possession thereof with the intent to sell.

In Commonwealth v. Miller, 131 Pa. 118, it was held definitely that food furnished to a customer in a restaurant was a sale of that food to the customer. See West v. Katsafanas, 107 Pa. Superior Ct. 118, 121. If serving a customer in a restaurant is legally a sale of the food served, then it follows that it is a sale of the ingredients of the food served. If oleomargarine is used as a dressing for potatoes or spinach served to a customer, then oleomargarine, being part of the food served, is sold to the customer as part of the meal and oleomargarine possessed for the purpose of dressing

food to be served to customers is clearly in the possession of the proprietor of the restaurant with intent to sell it. In the instant case, if the proprietor of the restaurant had no license to sell oleomargarine, it becomes immaterial whether the oleomargarine was colored or uncolored if it was in his possession with intent to sell it. The purpose of the Act of 1947, supra, is to have the buying public informed as to whether they are buying oleomargarine or butter and if oleomargarine is being sold to the public, the public is to be definitely informed as to that fact. This is clearly shown by the provision found in section 4 of the act, hereinbefore quoted, applying to restaurants, that customers must be notified by a placard or a menu card stating that oleomargarine is used and served.

Although defendant may have been acting in good faith, the testimony is clear that he violated the Act of 1947, supra, especially section 3 thereof. The justice of the peace properly gave judgment against him for the penalty of $100 as the act gives no option in regard to the penalty.

Both parties consented to have this case heard by the court without a jury and as the evidence was uncontradicted and no questions of fact were at issue but only one question of law, the court did not deem it necessary to make particular findings of fact and conclusions of law but merely stated the uncontradicted facts in the opinion and decided the question of law. The decision was delayed for a long time upon the request of the Commonwealth as the matter had been submitted to the Department of Justice for consideration.

Now, May 25, 1951, the court finds that defendant violated section 3 of the Act of June 30, 1947, P. L. 1154, and finds for plaintiff and against defendant in the sum of $100.